O’NIELL, Chief Justice
 

 (dissenting).
 

 I respectfully decline to subscribe to the remanding of this case to the district court, because I see no good reason why the case should be remanded — especially at this late stage in the proceedings — and without any suggestion by any party to the suit that the case ought to be remanded.
 

 The parties have had ample time to complain, either in the court of appeal or in this court, if they or any one of them felt aggrieved by the ruling of the judge excluding the so-called extrinsic evidence. The only evidence that was excluded was, first, the testimony of the attorney who prepared the agreement which forms the basis of this contest, and, second, a carbon copy of a letter written by him to one of the stepsons of Mrs. Garrett. The attorney was tendered as a witness for the stepchildren of Mrs. Garrett, and the objection to the admissibility of his testimony was made by the attorney for Mrs. Garrett. The ruling excluding the testimony was acquiesced in by the attorney for the stepchildren ; hence neither he nor the attorney in whose favor the ruling was made could complain of it, consistently. In fact neither of them has complained of the ruling.
 

 The attorney who offered the carbon copy of the letter in evidence also acquiesced in the ruling excluding the evidence. He had the right to bring the carbon copy of the letter before the appellate court for consideration, by objecting and excepting to the ruling excluding it, and by attaching to his objection and exception the carbon copy which he had offered in evidence.
 

 The issue in this case is very simple. John L. Garrett in his will undertook to bequeath to his widow the usufruct of the farm called the Sherman Place. She was entitled by law, R.C.C. art. 916, to the usufruct of the 1/5 interest inherited by her children from their father, but was not entitled to the usufruct of the 3/10 interest inherited by her stepchildren. The purpose of the will, obviously, was to give to the widow the usufruct on all of the % interest in the property inherited by all of the children of the testator, John L. Garrett. The testator did not use the term “usufruct” in his will, but declared: “I give and bequeath unto my wife, Mary McKinnon, the following described property, to-wit: My undivided one half interest in * * * [describing the 129 acres of land comprising the Sherman Place] * * * for her use and benefit as long as she shall live, after, her death to be divided in equal amounts between my surviving children or the heirs of any of the said children who
 
 *711
 
 may be dead. It being my intention that this land shall be held by my said wife until her death, for her use and benefit, and then to be divided equally between my heirs.”
 

 Obviously, there must have been some doubt about whether the bequest of the property to the widow, for her use and benefit during her lifetime, might be construed as a prohibited substitution, and hence null so far as the stepchildren were concerned, under article 1520 of the Civil Code, but, if the bequest should be considered as the giving only of the usufruct of the stepchildren’s share of the property to the widow of the testator, the bequest would be valid under the terms of article 1522 of the Civil Code. Therefore, in order to carry out the terms of the will, under an interpretation that would make it valid, the widow and all of the children of the testator entered into the agreement, by which she was given the usufruct of the share of her stepchildren, in addition to the usufruct which she was entitled to, of the share inherited by her own children. Hence they agreed that the will should not be probated but that she should be sent into possession of the property unconditionally, as ovtner of one-half and usufructuary of the other half, and that the children of the deceased should be recognized as owners of the one-half of the property, subject to the usufruct in favor of the widow. That agreement was carried out by a joint petition signed by the widow and all of the children of the deceased, and by- the judgment of the court sending the widow into possession of the property as owner of one-half and usufructuary of the other half, and as recognizing all of the children to be the owners of the other half of the estate, subject to the usufruct in favor of the widow. The only effect of this petition and judgment was to invest the widow with the usufruct of her stepchildren’s share of the property, she being already legally entitled to the usufruct of her own children’s share. She acknowledged in her pleadings in this case that the purpose of the agreement, which was signed contemporaneously with her taking possession of the property under the judgment of the court, was to carry out the terms of the will. She annexed the will to her pleadings in this suit, and averred that she made the will a part of her answer “as if fully written herein”. The will therefore formed a part of her judicial declaration that the purpose of the contemporaneous agreement entered into between her and the heirs of her deceased husband, on June 17, 1941, was to carry out her husband’s will. That is why we gave due consideration to the judicial declarations and admissions of Mrs. Garrett, and did not consider these declarations and admissions merely as “extrinsic evidence” of the intention of the parties to the agreement dated June 17, 1941. According to article 2291 of the Civil Code, a judicial admission, or declaration, which a party makes in a judicial proceeding, amounts to full proof against him. The judicial declaration of coufse cannot be divided against the party making it; all of the facts stated must be considered together. But that does not mean that the conclusions of law, stated in the pleadings in which a party makes a judicial adtnis
 
 *713
 
 sion of fact, must be accepted as true. In this case Mrs. Garrett’s admission that the purpose of the agreement made on June 17, 1941, was to carry out the terms of the will, — together with her making the will a part of her declaration, — is not affected in any way by her conclusion of law with respect to the effect of the agreement.
 

 It is stated in the prevailing opinion rendered on rehearing in this case that Mrs. Garrett gave a consideration for what was given her by the contract dated June 17, 1941. It is said: “in consideration for which she obligated herself not to alienate or dispose of any part of the property (she owned a community one-half interest therein).”
 

 I respectfully submit that the statement made in the contract dated June 17, 1941, that Mrs. Garrett should not attempt to encumber or sell the real estate to the disadvantage of the heirs of John L. Garrett, was not stated as a consideration for what she received by the contract. The statement was made merely as an explanation of Mrs. Garrett’s right to have possession and charge of the Sherman Place. The statement in the contract is as follows: “It is further understood and agreed that the said Mrs. Mary McKinnon Garrett shall have full charge of above described real estate, but shall not attempt to encumber or sell same to the disadvantage of your appearers [heirs of John L. Garrett]”.
 

 It is not at all likely that any person or group of persons owning an undivided 3/10 interest in a farm would deem it a real consideration for a transfer of the usufruct on the 3/10 interest in the farm, together with a transfer of 3/10 mineral interest therein, to a co-owner having already an undivided half interest in the farm and having the usufruct of an additional 1/5 interest, that the transferee should promise not to “attempt to encumber or sell same [the real estate] to the disadvantage of” the transferor or transferors. Mrs. Garrett, notwithstanding she was given “full charge of above described real estate [known as the Sherman Place]”, could not legally “encumber or sell same to the disadvantage of” her stepchildren, — any more effectively before than after agreeing not to attempt to do that. I do not believe that either her children or her stepchilden ever feared or anticipated that she might attempt to encumber or sell the Sherman Place to their disadvantage. The paragraph on that subject was written into the contract by its draftsman merely in explanation of the right of the usufructuary to “have full charge of above described real estate.” The transfer of the usufruct of the 3/10 interest in the Sherman Place, to the widow by her stepchildren, was a gratuitous donation, made for the purpose of carrying out the will of her husband,— as declared by the widow in her pleadings in this suit, — and as shown by the judgment obtained by her and the heirs of John L. Garrett, placing her in possession of his estate as owner of one-half and usufructuary of the other half of the estate. The only question in the case therefore is whether the usufructuary is entitled to take and retain for herself the 3/10 mineral interest in her stepchildren’s share of the land. That is a question of law, to be decided
 
 *715
 
 from the proven and admitted facts in the record.
 

 I respectfully submit that the remanding of this case is unique in several respects. In the first place it is extraordinary in that the remanding is done not by the court to which the case was appealed, but by the court to which the case was brought finally on a writ of review. It is extraordinary in that the remanding is done after the case has been decided and is pending on rehearing, and in that none of the parties to the litigation is complaining of the exclusion of the evidence, for the introduction of which the case is being remanded. The parties have had an unusually long time in which to make the request if any of them wanted the case remanded. The suit was filed in the district court on October 15,
 
 1942,
 
 and was tried there on January 28, 1943; that is, more than three years ago. The appeal was filed in the court of appeal on May 17, 1943; the petition for a review of the judgment of the court of appeal was filed in the supreme court on December 31, 1943; and the writ of review was issued and the original record was filed in this court soon afterwards. The case was first argued and submitted to the supreme court for decision on November 14, 1944, that is, a year and three months ago. The case was ordered reargued on January 31, 1945, and was argued and submitted again for decision on March 26,, 1945. The case was actually decided by this court on April 30, 1945, that is, more than nine months ago. A rehearing was granted on June 5, 1945; and the case was again argued and submitted for decision on December 10, 1945. If history should repeat itself, so far as the law’s delay in this case is concerned, we will have an opportunity to dispose of the case finally about three years from the date on which the district judge will receive the new evidence for which the case is being remanded. If the case maintains its previous schedule on its way through the courts we will dispose of it finally, say, sometime in April or May 1949. I have given the dates from the record to show that the remanding of this case is not only uncalled for — in the true sense of the term — and not warranted by article 906 of the Code of Practice — but will result in a hardship in preventing the payment for a very long time of that part of the royalty which should be paid either to the children and grandchildren of the first marriage of John L. Garrett or to his widow. My own opinion, of course, is that the money should be paid to the children and grandchildren of the first marriage of John L. Garrett, and hence that the judgment which we rendered on April 30, 1945, should be reinstated and affirmed and made the final judgment of the court. I say this because the title under which Mrs. Garrett was placed in possession of the Sherman Place was the judgment which she and the heirs of her deceased husband asked for and obtained from the judge of the district court. That title gave her the possession of the Sherman Place only as usufructuary, as far as the.half interest belonging to the heirs was concerned. A usufructuary, according to the definition in article 533 of the Civil Code, has the right to “all the profit, utility and advantages which it [the property sub
 
 *717
 
 ject to the usufruct] may produce,
 
 provided it be without altering the substance of the thing.”
 
 Accordingly, the word “revenues” in the contemporaneous agreement made between Mrs. Garrett and the heirs of her deceased husband on June 17, 1941, means the revenues from the products of the farm. The “revenues” to which a usufructuary is entitled does not mean the mineral rights in the land subject to the usufruct, because taking the oil, gas or other minerals from the land of another would be “altering the substance of the thing.”